UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EILEEN DICK,<br>        Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC. and<br>WORLDWIDE FLIGHT SERVICES, INC.<br>        Defendants. | )<br>)<br>)<br>)<br>)  DOCKET NO: 05-10446-GAO<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT AMERICAN AIRLINES, INC.'S STATEMENT OF UNDISPUTED
FACTS AND MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

The defendant, American Airlines, Inc., sets forth below the Statement of Undisputed

Facts together with its legal argument establishing that it is entitled to summary judgment.

**<u>UNDISPUTED STATEMENT OF MATERIAL FACTS</u>[1]**

**A.      <u>The Parties</u>**

1.      Plaintiff, Eileen Dick is a resident of both Dorchester, Massachusetts and

Toronto Canada.  Dick depo. at 4-5 (**<u>Exh. A</u>**).

2.      Defendant, American Airlines, Inc. ("American") provides domestic and

international carrier service for passengers.

3.      Worldwide Flight Services, Inc. ("Worldwide") is a Texas corporation and

was an independent contractor for American, in February, 2002 and other times providing

certain airline passenger support services including, *inter alia*, passenger embarking and

disembarking services such as escorts and wheelchair assistance and attendance.  Arner Aff.

¶6 (**<u>Exh. D</u>**).

---

[1] American submits the following Statement of Facts as undisputed solely for purposes of this motion and reserves
the right to contest any such facts at the time of any trial.

**B.    The International Flight**

4.    Ms. Dick and her husband purchased airline tickets from American for a round trip between Toronto, Canada and Port of Spain in Trinidad and Tobago ("Trinidad"). Dick depo. at 15-16 (**Exh. A**); see also (**Exh. B**).

5.    The flight was an international flight leaving Toronto, Canada to Miami, Florida and on to Trinidad.  Dick depo. at 48 (**Exh. A**); see Claim Letter of Plaintiff dated September 10, 2003 at p. 2-3 (**Exh. C**).

6.    The plaintiff and her husband left on January 27, 2002 with tickets for a return trip from Trindad – Miami – Toronto on February 25, 2002.  Dick depo. at 15-17, 20-21 (**Exh. A**).

7.    As part of the trip, Ms. Dick and/or her husband made wheelchair arrangements for Ms. Dick's elderly mother who resided in Trinidad and who would be returning with Ms. Dick on the return trip from Trinidad on February 25, 2002.  Dick depo. at 17-19; 21; 48 (**Exh. A**).

8.    Ms. Dick's itinerary had her leaving Trinidad (Port of Spain) on American Flight 1818 with a scheduled arrival time of 11:55 a.m. with the departing and continuing flight from Miami to Toronto on American Flight No. 1562 leaving at 1:15 p.m.   See (**Exh. B**).

**C.    The Incident At Miami International Airport En Route To Connecting Flight**

9.    On the return trip from Trinidad on February 25, 2002, plaintiff arrived in Miami, Florida and was to connect with her continuing flight onto Toronto, Canada.  Dick

2

depo. at 48 (**Exh. A**); see (**Exh. C**) at pp. 2-3. The flight from Trinidad into Miami was delayed and arrived at 12:58 p.m. See (**Exh. F**).

10. Ms. Dick has utilized American Airlines for this trip between Toronto and Trinidad on many occasions in the past. Dick depo. at 26 (**Exh. A**).

11. After arrival at the Miami International Airport on February 25, 2002, Ms. Dick's mother was provided wheelchair assistance to the connecting flight from Miami to Toronto. Dick depo. at 28 (**Exh. A**).

12. The wheelchair assistance included a wheelchair and an attendant which was provided by Worldwide and was part of the furtherance of the carriage and part of the services provided to American passengers upon request. See (**Exh. C**) at pp. 2-3.

13. Plaintiff alleges that American owned and controlled "the premises" where the incident occurred. See Complaint pp. 6-7(**Exh. E**).

14. Ms. Dick and her mother, who was provided the wheelchair assistance, were to be escorted by the attendant from their arrival flight from Trinidad to their scheduled departing and connecting and continuing flight (AA 1562). Dick depo. at 30-31 (**Exh. A**); see (**Exh. B**).

15. Ms. Dick and her mother already had their boarding passes, their luggage was already on the plane, they were inside the security checkpoints, and they were on their way to their connecting flight for the last leg of their international flight. Dick depo. at 31, 48-49, 71 (**Exh. A**).

16. Ms. Dick, her mother and their escort/attendant arrived at the escalator and elevator in the area of terminal used exclusively by American ticketed passengers. Dick depo. at 31-32 (**Exh. A**); Arner Aff. PP. 4-5 (**Exh. D**).

17.     According to Ms. Dick, she and her mother were informed by the Worldwide attendant/escort that the elevator was not working and that they were to take the escalator. Dick depo. at 32-33 (**Exh. A**); see (**Exh. C**) at pp. 2-3.

18.     According to Ms. Dick, the attendant/escort instructed Ms. Dick and her mother that they would have to use the escalator as there was no other way.  Dick depo. at 32-33 (**Exh. A**); see (**Exh. C**) at pp. 2-3.

19.     According to Ms. Dick, Ms. Dick told the Worldwide attendant/escort that she did not think using the escalator was "a good idea", was told the elevator was not working and that that there was no other elevator or way to get to the connecting flight.  Dick depo. at 32-33 (**Exh. A**); see (**Exh. C**) at pp. 2-3 (plaintiff told no other way).

20.     Both Ms. Dick and her mother got on the escalator as purportedly instructed by the attendant/escort.  See (**Exh. C**) at pp. 2-3; Dick depo. at 33 (**Exh. A**).

21.     The attendant/escort were to meet Ms. Dick and her mother at the end of the escalator.  Dick depo. at 37-38 (**Exh. A**).

22.     According to Ms. Dick, about a quarter of the way up the escalator, Ms. Dick's mother who was standing with her cane toppled backward onto Ms. Dick.  Ms. Dick grabbed her mother and grabbed onto the side of the escalator.   Dick depo. at 35-37 (**Exh. A**).

23.     According to Ms. Dick, Ms. Dick did not fall but bent down to her knees and purports to have "stretched out her knee" while holding her mother.  Dick depo. at 36-37 (**Exh.  A**).

4

24.    Ms. Dick and her mother were provided wheelchairs at the top of the escalator with Ms. Dick claiming to have right knee pain and were attended to by two attendants. Dick depo. at 38 (**Exh. A**).

25.    An ambulance and paramedics were called by the attendants and arrived to examine Ms. Dick and her knee. Dick depo. at 40-41 (**Exh. A**).

26.    Ms. Dick was examined by the paramedics and asked if she wanted to go to the hospital. She stated she did not, but wanted to continue on her trip home. Dick depo. at 40-42 (**Exh. A**).

27.    Because of the incident, Ms. Dick missed her scheduled flight which was scheduled to leave at 1:15 p.m. <u>See</u> (**Exh. F**); Dick depo. at 44 (**Exh. A**).[2]

28.    At the time of the incident, Ms. Dick (and her mother) were inside the airport terminal in an area restricted to American ticketed passengers. Dick depo. at 31, 48-49; 71 (**Exh. A**); Arner Aff. ¶4 (**Exh. D**).

29.    At the time of the incident, Ms. Dick and her mother already had their boarding passes, their baggage was on board the plane, and they had just gotten off their arriving flight and were in route to their connecting flight to Toronto. Dick dep. at 31, 48-49; 71 (**Exh. A**).

30.    According to Ms. Dick, at the time of the accident, the wheelchair attendant was leading and directing Ms. Dick and her mother to the gate for the continuing flight onto Toronto. Dick depo. at 48-49, 70, 78, 30-31 (**Exh. A**); <u>see</u> (**Exh. C**) at pp. 2-3**.**

---

[2] While Ms. Dick was not clear whether the flight was delayed or she missed it due to the incident, her ticket and itinerary show she was scheduled to leave on Flight 1562 at 1:15 p.m. which was shortly (15 minutes) after her flight from Trinidad arrived. Given the incident, it is clear she missed the flight and took the later flight. <u>See</u> (**Exh. B**) and (**Exh. F**).

31.    According to Ms. Dick and at the time of the incident, Ms. Dick and her mother were under the direction and control of the attendant.  Dick depo. at 70, 78 (**Exh. A**); see (**Exh. C**) at pp. 2-3.

32.    According to Ms. Dick, she was told that use of the escalator was necessary in order to reach the connecting flight.  See (**Exh. C**) at pp. 2-3.

33.    The escalator and place of injury was only a short distance from the arriving and scheduled  departing flights.  Arner Aff. ¶¶ 5 (**Exh. D**).

34.    The incident took place within five minutes of arriving and shortly before the scheduled flight was to leave and, as a result, caused Ms. Dick and her mother to miss the flight and they took a later flight on to Toronto.   See Dick depo. at 44 (**Exh. A**) and (**Exh. B**).[3]

35.    As a result of her fall on the escalator, Ms. Dick claims to have injured her knee.  She underwent physical therapy for a number of months but did not undergo any surgery.

36.    Plaintiff initiated this action on February 1, 2005 more than two years after the incident.  See Complaint (**Exh. E**).

37.    Plaintiff alleges and claims that as part of her international flight and travel with American she requested wheelchair/attendant services at all airports of her travel for her elderly mother for purposes of transport through airports and reaching and getting on and off the arriving and departing flights and that negligent wheelchair assistance and attendant services were provided in that she and her elderly mother should not have been directed and instructed to use the escalator when in Miami and trying to reach their connecting flight.  See

---

[3] Ms. Dick's flight from Trinidad was originally scheduled to arrive in Miami at 11:55 a.m. but due to delay out of Trinidad arrived in Miami at 12:58 p.m.  See (**Exh. F**).  Ms. Dick's scheduled departing and connecting flight (No. 1562) was scheduled to leave at 1:15 p.m. (**Exh. B**).

(**Exh. C**); (**Exh. E**) and Dick depo. at 18, 20 (**Exh. A**).  Plaintiff asserts two counts of negligence as to American and Worldwide.  <u>See</u> Complaint (**Exh. E**).   As to American, plaintiff alleges that  American "owed a duty to the Plaintiff to make reasonable efforts to ensure that the companies they allow to operate on their premises do so with reasonable care" and that American "breached" that "duty."  <u>Id</u>.  As to Worldwide, it is claimed that Worldwide breached a duty to exercise reasonable care in transporting plaintiff and breached that duty by having plaintiff's mother stand on the escalator.  <u>Id</u>.

## ARGUMENT

### I.    PLAINTIFF'S CLAIMS ARE GOVERNED AND CONTROLLED BY THE WARSAW CONVENTION[4]

The Warsaw Convention is a comprehensive international treaty governing liability in "all international transportation of persons, baggage or goods."  49 U.S.C. §40105, Article 1(1). Where transportation is "international," as defined in Article 1(2), the Warsaw Convention applies and governs any claim for damages.  The Warsaw Convention, in turn, sets out an array of liability rules pertaining to personal injuries (Article 17), baggage or goods loss, damage, or destruction (Article 18) and damage occasioned by delay (Article 19).  The two preeminent goals and purposes of the Convention were to establish uniformity as to liability and <u>limit</u> the liability of air carriers.  <u>El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng</u>, 525 U.S. 155, 169-70 (1999); <u>In re: Air Disaster at Lockerbie, Scotland</u>, 928 F.2d 1267, 1270 (2nd Cir. 1991); <u>see also</u> <u>Langadinos v. American Airlines, Inc.</u>, 199 F.3d 70, n.2 (1st Cir. 2000).

The Supreme Court has recently held that the Warsaw Convention is the exclusive remedy for claims stemming from international flight.[5]  <u>El Al Israel Airlines, Ltd. v. Tsui Yuan</u>

---

[4] Convention for the Unification of Certain Rules Relating to International Transportation by Air (Warsaw Convention), October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted at 49 U.S.C.S. § 40105 note.

7

Tseng, 525 U.S. 155, 169-70 (1999); see also Langadinos, 199 F. 3d at 70, n. 2.  The High Court held that a claimant cannot resort to state law even where the claimant cannot recover under the Convention. Id.  As a treaty to which the United States adheres, the convention is the supreme law of the land and trumps state and local law when it applies.  Id.; see Commercial Union Ins. Co. v. Attalia Airlines, S.P.A., 347 F. 3d 448, 456-57 (2nd Cir. 2003).

   In finding the Convention to be exclusive, the Supreme Court stated that the primary purpose behind the Convention was to limit a carrier's liability and "to achieve uniformity of rules governing claims arising from international air transportation."  119 S. Ct. at 671-72.  The Court noted that to allow parties to pursue claims under local state law when the Convention does not permit recovery would expose carriers to unlimited liability under diverse legal regimens and "encourage artful pleading by plaintiffs seeking to opt out of the Convention's liability scheme when local law promised recovery in excess of that prescribed by the treaty."  Id. at 673.  This, in turn, was found to "scarcely advance the predictability that adherence to the treaty has achieved worldwide."  Id.  "[T]he existence of state causes of action would not only result in the consistent application of law to the same accident, but also would cause enormous confusion for airlines in predicting the law upon which they would be called to respond."  Lockerbie, 928 F.2d at 1276.  Accordingly, a state law claim for personal injuries is preempted by Warsaw if it occurred in connection with an international flight and either on board the aircraft or in any of the operations of embarking or disembarking as defined and construed by the

---

[5]  The exclusivity of the Warsaw Convention is further established by the amendment to Article 24 contained in Montreal Protocol No. 4.  Montreal Protocol No. 4 was ratified by the United States on September 28, 1998 and amends Article 24 to read, in relevant part:  "In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention."  The amendment, on its face, is all encompassing and clearly establishes the broad preemptive force of the Warsaw Convention over any state based claims, "however founded" arising out of international travel. The amendment to Article 24 accomplished by Montreal Protocol No. 4 is a clarification of the preemptive scope of the Convention and thus may be applied retroactively.  See, e.g., Hermano v. American Airlines, 1999 WL 1269187 at n.9 (N.D. Cal. 1999)(finding amendment of Montreal Protocol No. 4 to be retroactive).

8

Convention.  See Tseng, 525 U.S. at 160-61; 169-70; Fazio v. Northwest Airlines, Inc., 2004

U.S. Dist. LEXIS 8423 (W.D. Mich 2004) citing Tseng, 525 U.S. at 171-72 (a copy of Fazio)

decision is attached as (**Exh. G**).  As more fully set forth below, there can be no dispute that the

Warsaw Convention applies and that it provides the exclusive means to any potential relief as to

both defendants, American and Worldwide.[6]

### i. *Plaintiff's Flight was an International Flight Under the Convention*

The flight at issue was international in that it involved a round trip flight between

Toronto, Canada and Trinidad.  Both Trinidad and Canada are signatories to the Convention.

See e.g., Highlands Insurance Co. v. Trinidad & Tobago Airways Corp., 739 F.2d 536, 537 (11th

Cir. 1984)(Trinidad signatory).  Not only are both Canada and Trinidad signatories to the

Convention, but as the trip was a round trip from and return to Toronto, Canada with an agreed

stopping place in both the United States and Trinidad (another country), the trip is considered

international for purposes of the Convention.[7]

---

[6] The Warsaw Convention applies to both American and Worldwide.  American was the carrier and Worldwide, an independent contractor, provided wheelchair services on behalf of American for its passengers.  The Warsaw Convention applies to independent contractors of the carrier, like Worldwide, who provide services in furtherance of the carriage.  Indeed, it has been held to specifically apply to entities like Worldwide who provide passenger wheelchair services.  Carroll v. United Airlines, Inc., 739 A.2d 442, 447 (App. Ct. N.J.) (claim by plaintiff injured in course of wheelchair services covered by Warsaw Convention); Johnson v. Allied Eastern Maintenance Corp., 488 A.2d 1341, 1343 (D.C. App. 1985)(same).  See also Baker v. Lansdell Protective Agency, Inc., 590 F.Supp. 165 (S.D.N.Y. 1984) (liability limitations in Warsaw Convention applied in action against entity provided security checks at airport for carrier); Julius Young Jewelry Manufacturing Co. v. Delta Airlines, 414 N.Y.S. 2d 528 (1979) (liability limitations in Warsaw Convention applied in action against independent contractors engaged by airlines to perform inter-line baggage transfer services); Garlitz v. Allied Aviation Services Int'l Corp., 17 Av. Cas. (CCH) 17, 238 (N.Y. Sup. Ct. 1982 (statute of limitations in Warsaw Convention applied in action against independent contractor  providing services which airline itself would have provided); Waxman v. Mexicana De Aviacion, 13 F. Supp. 2d 508, 1513-15 (S.D.N.Y. 1988) (air carrier's cleaning subcontractor subject to provisions of Warsaw Convention); Kabbani v. Int'l Total Servs., 805 F. Supp. 1033, 1039 (D. D.C. 1992) (finding that Convention applies to agents of an air carrier that provided security services).

[7] International and transportation includes "any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a Single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzeinainty, mandating authority of another power, even though that power is not a party to the convention."  Warsaw Convention, Article 1(2), reprinted at 49 U.S.C. §40105 notes.

*ii. Both the Incident and Claim Arose out of the Operation*
*of Embarking/Disembarking Under the Convention*

Not only was plaintiff involved in an international flight and travel but her claim and incident arise out of the operations of embarking and/or disembarking as to her international flight. See El Al Israel Airlines, 525 U.S. at 160-161; King v. American Airlines, Inc., 284 F.3d 342 (2nd Cir. 2002); see also Fazio, 2004 U.S. Dist. LEXIS 8423 (**Exh. G**). Article 17 expressly provides:

> The carrier shall be liable for damage sustained in the event of the death or wound or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 U.S. § 40105; see also Tseng, 525 U.S. at 161 (recovery for personal injury suffered in the course of any of the operations of embarking or disembarking if not allowed under the Convention is not allowed at all).

The three factors found to be relevant to determining whether a passenger was engaged in the course or process of embarking on an international fight are: (1) the passenger's location at the time of the injury; (2) the passenger's activity at the time of injury; and (3) the degree of control over the passenger when the injury occurred. See McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 316-17 (1st Cir. 1995). Under McCarthy, the three factors "activity, location and control" are "inextricably intertwined." Id. at 316-17. Indeed, it is the "totality of circumstances that control."

Additionally, it has been found that where a claim is based on a duty to assist in the embarkation and disembarkation process it arises out of the "operation of embarking and disembarking" under the Convention. See Fazio, 2004 U.S. Dist. LEXIS 8423 (**Exh. G**).

Plaintiffs claim is governed and preempted by the Warsaw Convention. As an initial matter, plaintiff's claims and theory of liability indisputably pertain to the operations of embarking and disembarking. See Fazio, 2004 U.S. Dist LEXIS 8423 (**Exh. G**) (as plaintiff's theory and claim of liability was premised on the duty to provide assistance in embarkation and disembarkation at airports including wheelchair assistance through airport terminal to reach flights, claim is preempted by Warsaw Convention). The theory of liability is that the defendants owed a duty to provide proper transport services at all airports of her travel. Specifically, plaintiff requested as part of her travel with her elderly mother that wheelchair assistance and transport be provided from and to her flights. Dick depo. at 17-20; see (**Exh. C**) p. 2[8]. It is claimed that defendants breached this duty by the attendant who was providing the wheelchair service and transport in directing both her and her elderly mother to use the escalator while they were in Miami and during the course of transporting her and her mother to their connecting flight. See (**Exh. C**). As the claim and theory of liability is premised on the alleged duty to assist in embarkation and disembarkation by providing wheelchair and escort assistance at airports to and from flights at each point of the itinerary, the claim pertains to the operations of embarking and disembarking under the Convention preempting state law. Fazio, 2004 U.S. Dist. LEXIS 8423 (**Exh. G**).

The decision in Fazio (**Exh. G**) is directly applicable here. There, the Court held that the Convention controlled as the claimant passenger was injured on an escalator in the course of trying to transport himself through the Rome airport during the midst of an international flight. Id. at *2, *6-7. (**Exh. G**). In finding that the Convention controlled rendering plaintiff's claim untimely as it was not filed within the requisite two years, it rejected the claim that the injury did

---

[8] According to plaintiff's demand letter (**Exh. C**), Ms. Dick's mother "needed wheelchair assistance on and off the airplanes as well as traveling throughout the airport and arrangements were made with airline personnel for her to have such assistance." (**Exh. G**) at p. 2.

not occur during embarking/disembarking under the Convention. The claim was found preempted by the Convention because the action was premised on the manner in which the defendants transported or failed to transport through the airport for boarding. According to the Court:

> Liability in this case is not premised on conditions in the airport terminal, but on the airline's failure to transport Plaintiff and her husband to the boarding area by wheelchair in such a manner that they would not be required to maneuver the escalator as they made their way through airport to the airplane for boarding. Plaintiff's theory of liability against the airlines is premised on her contention that the airlines owed her and her husband a duty to assist in embarkation and disembarkation by providing wheelchair assistance through the airport to the airplane at each point on their itinerary. Plaintiff's allegations indisputably pertain to the operations of embarking and disembarking because plaintiff's theory of liability expands the scope of the airline's operations of embarking and disembarking with respect to these two travelers.

Fazio, supra (**Exh. G**) at *8-9.

Similarly, here, plaintiff complains as to the wheelchair assistance and escort services and associated directions provided during her international flight and transport between her de-boarding from her arrival flight from Trinidad to her boarding her connecting flight to Toronto. See (**Exh. C**). Indeed, the wheelchair assistance and services were specifically part of the international contract of carriage obtained by Ms. Dick for her international flight with her mother. Moreover, plaintiff claims, as in Fazio, that defendants owed a duty to properly assist in embarkation and disembarkation through the airport via the wheelchair/escort transport services. Id. Plaintiff's claim and action is clearly preempted. Fazio, supra (**Exh. G**).

Plaintiff's claim is preempted by the Convention for the additional and independent reason that the "activity, control, and location" factors all demonstrate plaintiff was in the course of the operations of embarking and disembarking at the time of the incident.

As to activity, plaintiff was injured while she and her mother were being provided with a wheelchair and attendance services which plaintiff had requested as part of her international flight. Plaintiff and her mother were being directed to their connecting flight and the specific use of the escalator at the time of the incident. This activity of proceeding from her flight from Trinidad to her connecting flight to Toronto was integral to her international travel. Notably, her checked luggage was already aboard the plane and she already had her boarding passes. She was not only within minutes of her arrival but also within minutes of her originally scheduled departure flight to Toronto which she missed due to her fall.

As to the "location," plaintiff alleges that it took place on American's premises. See Compl. p. 8 (**Exh. E**). Plaintiff's incident, in fact, took place within minutes of arriving on her flight from Trinidad and in the restricted area of the terminal a short distance from both her arriving and departing gates. The incident occurred in the area of the terminal restricted to American ticketed passengers and was not open to the general public.

The control factor also demonstrates that the Convention applies. According to the plaintiff, she was being escorted and directed by a Worldwide employee to the applicable gate and connecting flight to continue on the last leg of the international flight. Plaintiff's mother was wheelchair bound and the attendant/escort was leading and directing plaintiff and her mother to the connecting flight. They were instructed to use the escalator where the alleged injury occurred. Ms. Dick testified that she was substantially under the control of the attendant and that she was told there was no other way to go but the escalator. She was in the middle of her international flight wherein the airline dictated and controlled the place of arrival and gates of the arriving and connecting flights. The injury likewise occurred in the restricted area of the airport, limited to ticketed passengers and which area is exclusively used by American as well as within

13

the security checkpoints.  Further, wheelchair assistance and escort services were being provided at the time of the incident including directing the plaintiff and her mother to the connecting flight and the use of the escalator which was necessary to get to the flight.  In fact, even after plaintiff protested about using the escalator she was told she had to use it as it was the only way to go.

Finally, as mentioned *infra*, the fact that plaintiff's claim centers on the wheelchair services and, more specifically, the directions and instructions received from the wheelchair services and attendant/escort as part of the contracted services for embarking and disembarking from the flights is also compelling if not controlling.  See e.g., Fazio v. Northwest Airlines, Inc., 2004 U.S. Dist. LEXIS 8423 (W.D. Mich. 2004) (where theory of liability was that airline failed to provide proper wheelchair assistance in embarking and disembarking Warsaw Convention applied to injury which took place on escalator.

Any solace, plaintiff might seek from the decision McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 316-17 (1st Cir. 1995) is unavailing.  In fact, the decision demonstrates that summary judgment must enter for the defendants.

In McCarthy, it was held that a claimant who was injured on an escalator in the public area of the terminal prior to her flight was not "embarking" and thus the claim was not covered by the Convention.  56 F.3d 313.  There, the plaintiff was injured on an escalator in the public part of the terminal prior to her international flight leaving Boston.  The court in McCarthy relied on the fact that the injury occurred in a public part of the terminal; that there was no evidence that use of the escalator was necessary to reach the flight; and that the injury took place a considerable distance from the flight in that plaintiff had not left the common area of the terminal and had not even located the bus that was needed to get to the vicinity of the aircraft.

1001889v1

As set forth above, the specific facts in McCarthy are materially distinguishable from those here as, *inter alia*, Ms. Dick had already commenced her international flight, was in the midst of the international flight and travel between Trinidad and Toronto, was attempting to reach her connecting and continuing flight, was in a restricted area of the airport limited to ticketed passengers, was being provided wheelchair assistance and escort services at the time of the incident which she had requested as part of her international flight and carriage, was specifically directed and told by the attendant/escort to take the escalator as it was the only means to reach the continuing flight and fell both shortly after she arrived and before she was originally scheduled to leave on the connecting flight.

Unlike McCarthy, is it undisputed that the injury occurred while plaintiff and her mother were attempting to meet their connecting and continuing flight. Plaintiff was in the middle of her international flight between Trinidad and Canada as well in a restricted area of the airport. She had arrived at the Miami International Airport from Trinidad and was in the course of continuing on her connecting flight for the last leg of the trip to Toronto, Canada. This is a substantial and controlling distinction from the facts in McCarthy as plaintiff here was in the course and midst of the international contract of carriage at the time of the injury while the McCarthy plaintiff had not yet commenced her travel.

Additionally, it is undisputed that plaintiff already had her boarding pass (as well as checked baggage aboard plane) and, unlike the claimant in McCarthy, was in the restricted and security protected area of the terminal limited to American ticketed passengers. See McCarthy, 56 F.3d at 318; see also Marotte v. American Airlines, Inc., 296 F.3d 1255, 1261 (11th Cir. 2002) (Warsaw applied as passenger "had already passed through security and were in section of the airport that is not open to the general public, but rather only to ticketed passengers");

Evangelinos v. TransWorld Airlines, Inc., 550 F.2d 152, 155 (3rd Cir. 1977) (Convention applied as passenger injured in terrorist attack in restricted area of airport); Day v. TransWorld Airlines, 528 F.2d 31, 33-34 (3rd Cir. 1977) (same).  Indeed, the Court in McCarthy noted the fact that the injury in that case took place "in the part of the terminal not restricted to passengers" as a "most important[]" factor in its decision. Id. at 318 ("Most importantly, it [incident] took place in a part of the terminal not restricted to passengers").  The undisputed fact that Ms. Dick's incident with her mother took place in that portion of the airport restricted to ticketed passengers is a further and controlling distinction from the facts in McCarthy mandating that summary judgment enter for defendants.  Indeed, the incident took place in the area exclusively used by American and American ticketed passengers.

While the injury in McCarthy also took place on an escalator this fact is not at all controlling.  As mentioned above, the escalator and injury is located in a restricted area of the terminal limited to ticketed passengers and in an area of gates and terminal exclusively used by American ticketed passengers.  Also as set forth above, Ms. Dick was in the midst of her international travel attempting to continue her flight to her final destination.  Also unlike McCarthy, there is evidence that the escalator was necessary in order to reach the continuing flight. Compare, McCarthy, 56 F. 3d at 317 (no evidence that plaintiff had to use escalator to reach flight).  Indeed, according to Ms. Dick, when she questioned the attendant/escort as to use of the escalator she was informed there was no other way to go.  Moreover, the incident took place during transport services she requested and obtained as part of her international flight with American.  Finally, the incident with plaintiff took place both shortly after her arrival and shortly before Ms. Dick's originally scheduled flight was to leave which incident actually caused her to miss the flight and take a later flight to Toronto.

16

Plaintiff's state law claim and underlying alleged incident is clearly preempted by the Warsaw Convention.

## II.    PLAINTIFFS' COMPLAINT AND CLAIMS ARE TIME-BARRED UNDER THE CONVENTION

As it is clear that plaintiffs' claims are governed by the Warsaw Convention, any remedy, if available at all, must be found in the Convention itself. Plaintiff, however, cannot recover under the Convention as any claim is time-barred.

Article 29 of the Convention provides as follows:

> (1) The right to damages shall be extinguished if an action is not brought within two years, reckoned from the date of arrival at the destination or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped.

Article 29(1) is unequivocal in its terms requiring any suit against a carrier to be brought within two years of arrival, planned arrival, or where the transportation stopped. The two year time period is a "condition precedent to suit." Fishman, 132 F.2d at 43; Scott v. American Airlines, Inc., 187 F. Supp. 2d 557 (D. Mary. 2002); Kahn v. Trans World Airlines, 82 A.D. 2d 696, 443 N.Y.S. 2d 79, 87 (App Div. 1981); Mitchell, Shackelton & Co. v. Air Exp. Int'l Corp., 704 F. Supp. 524, 526 (S.D.N.Y. 1989).[9]

---

[9] Article 29 has been strictly construed in an effort to ensure uniformity and to be consistent with the goals and purposes of the Convention. The two year period has, in fact, been held not to allow for tolling by local law. See, e.g., Husmann v. TWA, 169 F.3d 1151 (8th Cir. 1999) (no tolling for bankruptcy filing); Fishman v. Delta Airlines, 938 F. Supp. 228 (D.C.N.Y. 1996), aff'd 132 F.3d 138 (2nd Cir. 1998) (two year limitation not tolled by infancy); Scott, 187 F. Supp. 2d 557 (D. Mary. 2002) (no tolling based on infancy); Magnus Electronics and Royal Bank of Canada and Aerolineas Argentinos, 611 F. Supp. 436 (D.C. Ill. 9185) (no tolling for fraudulent concealment); Goldberg v. El Al., 13 Avi. 18191 (D.C. N.Y. 1975)(no tolling); Kadir v. Singapore Airlines, Inc., 1999 U.S. Lexis 6131 (N.D. Ill. 1999)(Article 29 not subject to equitable tolling).

17

Here, it is undisputed that the alleged injury occurred in February, 2002 and that plaintiff did not file this action until February, 2005. The Convention preempts and bars plaintiff's claim as it is untimely as a matter of law entitling the defendants to summary judgment.

### III.    PLAINTIFF'S STATE LAW CLAIM AS TO AMERICAN FAILS AS A MATTER OF LAW

Even assuming the Warsaw Convention does not apply, which it does, plaintiff's state common law claim for negligence otherwise fails as a matter of law. American neither owed nor breached the alleged duty of care claimed by the plaintiff.

Plaintiff asserts that American owed plaintiff the duty "to make reasonable efforts to ensure that companies they allow to operate on their premises do so with reasonable care" and that American "breached their duty to ensure that [Worldwide] operated on their premises with due care." Complaint PP 9-11.

Whether there is a duty of care is a question of law for the court. See O'Sullivan v. Shaw, 431 Mass. 201, 203 (2000); Davis v. Westwood, 420 Mass. 739, 742-43 (1995). Further, even assuming a duty of care, plaintiff bears the burden of proof as to presenting evidence of a breach of that duty.

As set forth by her complaint, plaintiff's does not (and cannot) allege or assert that American played any role in the direction or instruction to the plaintiff as to the escalator or that it had any control over the escort agent, an employee of Worldwide. While plaintiff contends that American had a duty to ensure Worldwide acted reasonably it cannot cite any case law for such a proposition as both American and Worldwide are separate corporate entities. Moreover, plaintiff has not and cannot present any evidence that American, even assuming such a duty, did not exercise reasonable care as to Worldwide. Given that American owed no duty of care and the complete lack of any evidence of any breach of any such duty by American, American is

18

entitled to summary judgment on the state negligence claim even assuming that the Warsaw Convention does not apply which it does.

## <u>CONCLUSION</u>

Based on the foregoing, the defendant American Airlines, Inc. is entitled to the entry of summary judgment as to the claims contained in Plaintiff, Eileen Dick's Complaint.

Respectfully Submitted,
The Defendant,
AMERICAN AIRLINES, INC.
By their attorneys,
MORRISON MAHONEY  LLP


/s/ Tory A. Weigand

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing  (NEF) and paper copies will be sent to those indicated as non registered participants on  **May 16, 2006**.

/s/ Tory A. Weigand
_____

Tory A. Weigand, BBO #548553
250 Summer Street
Boston, MA  02210-1181
(617) 439-7500 (main no.)
(617) 737-8827 (direct dial)