UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EILEEN DICK,<br>    Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC. and<br>WORLDWIDE FLIGHT SERVICES, INC.<br>    Defendants. | DOCKET NO: 05-10446-GAO |

**DEFENDANT, AMERICAN AIRLINES, INC.'S
REPLY MEMORANDUM IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

NOW COMES the defendant American Airlines, Inc. ("American") and submits this Reply Memorandum in support of its Motion for Summary Judgment in the above-referenced matter.

In her opposition to defendant's motion for summary judgment, plaintiff contends that the Warsaw Convention,[1] and particularly Article 17, does not apply and as such, her complaint is not time-barred by the two-year limitation period provided for under the Convention. Plaintiff contends that the "location, activity and control" factors require that the summary judgment motion be denied. See, <u>Acupdo-Reinsorso v. Iheria Lineas Aer Eas De Espana, S.A.</u>, 2006 U.S. App. LEXIS 12610 (1st Cir. May 23, 2006) In particular, plaintiff contends that her "injuries occurred during a very long layover of at least several hours," in a "public area, and a "distance away from the airplane she had traveled in on." She also asserts that she was not subject to any

---

[1] On July 31, 2003, the United States Senate ratified the Montreal Convention (i.e. the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (S. Treaty Doc. 10G-45). See 149 Cong. Rec. S10869 (2003). The Montreal Convention replaced the Warsaw Convention. However the Montreal Convention does not apply to conduct occurring before it entered into force on November 4, 2003. See <u>Ehrlich v. American Airlines, Inc.</u>, 260 F.2d 366, 371 n. 4 (2d. Cir. 2004). Moreover, Article 17 under the Montreal Convention is identical to Article 17 of the Warsaw Convention and the preemptive effect of the Montreal Convention is substantially the same as that of the Warsaw Convention. See <u>Paradis v. Ghana Airways Ltd.</u>, 348 F. Supp. 2d. 106, 111 (S.D.N.Y. 2004).

1

control or direction.  As fully set forth below, and in American's previously filed memorandum of law, plaintiff's assertion is contrary to the undisputed facts including her own testimony and summary judgment must enter for the defendants.

The "location, activity and control" factors all militate strongly that the Convention applies and that plaintiff's claim is time-barred.  Acevedo-Reinsoso, 2006 U.S.  App. LEXIS 12610, *9-10 ("absent some direction from the Supreme Court" activity, location and control factors are "highly relevant in determining the applicability of the Convention").  The assertion by plaintiff that her fall on the escalator took place "in a public area" of the terminal is simply belied by her own testimony and the undisputed facts before the court.  It is undisputed that Ms. Dick's incident took place on the escalator located near Gates E9 and E11 which is in the restricted, security protected part of the terminal.  Arner Aff. ¶ 5 (**Exh. D** to American's Motion); Dick Depo. at 31-32 (**Exh. A** to American's Motion).  The location was in a restricted area of the airport, limited to American ticketed passengers, and not open to the general public.  Dick Depo. at 31 ("Q. And did you understand that to be a restricted area of the airport, that is, only ticketed passengers could be in that area?  A.  Yes."); Arner Aff. ¶ 5 (**Exh. D** to American's Motion)("In February, 2002, Gates E9 and E11 and connected terminal area was used exclusively by American flights and American ticketed passengers and the E escalator/elevator was located near Gates E9 and E11 within the area used exclusively by American ticketed passengers and within the restricted/security protected area of the terminal").  Indeed, not only did plaintiff so testify at her deposition but she specifically alleged in her complaint that "the premises" where she fell was owned and/or controlled by American.  See Complaint, ¶¶ 6, 7, 10, 11 (**Exh. E** to American's Motion).

2

Plaintiff's contention that the incident took place during "a long layover" is likewise belied by the undisputed factual record. Specifically, the record before the court includes documentation of the arrival and departing times of her flights. (See **Exh. E** to American's Motion). The flight into Miami arrived at 12:58 p.m. Id. Plaintiff's continuing and connecting flight onto Toronto was scheduled to leave at 1:15 p.m. Id. Plaintiff missed her connecting flight, no doubt as a result of the incident, and took a later flight at 7:15 p.m. Further, it is otherwise undisputed that the "activity" she was undertaking was traveling from her arriving flight to her departing flight under the direction of the wheelchair attendant at the time of the injury. Accordingly, the unsupported assertion in the opposition that she was in the midst of a long layover is belied by her own flight itinerary, her sworn testimony, and with both the arrival and departing times of her flights which have been made part of the record.

Plaintiff's assertion in her opposition that the incident took place a "distance away" from the aircraft is misleading. The factual record before the court establishes that the escalator upon which she fell was only 25 feet from her arriving flight. (Arner Aff. ¶¶ 4-6 attached as **Exh. D** to American's Motion). Moreover, according to plaintiff, the incident took place within only minutes of arriving and occurred only minutes before her originally scheduled connecting flight was scheduled to depart. (See **Exh. E** to American's Motion). In sum, both the location and the temporal and physical proximity of the incident to plaintiff's arriving and departing flights militates strongly that the Warsaw Convention applies.

As set forth in American's initial memorandum, McCarthy provides no solace for plaintiff as the claimant in that case was injured while on an escalator in the public area of the terminal prior to the flight. Unlike here, not only did the incident take place in the public part of the terminal, but the court emphasized that there was no evidence that the use of the escalator

3

was necessary to reach the flight. McCarthy, 56 F. 3d at 14, 17. Moreover, the injury took place a considerable distance away from her flight with the plaintiff not even having located the bus that was needed to get to the vicinity of the aircraft. Id. at 13-14. These facts are markedly different from those *sub judice*. Here, not only had the plaintiff just arrived and was on her way to her connecting flight and thus in the midst of her international flight, but the incident took place within minutes of arrival, in the restricted area of the terminal limited to American ticketed passengers, within only approximately twenty-five feet of her arriving gate, and within only a few minutes before the departing flight was originally scheduled to leave. Further, plaintiff's mother, with whom plaintiff was traveling, was being provided wheelchair assistance that the plaintiff had requested and both were being specifically directed by the attendant to use the escalator where the incident took place. It is undisputed that plaintiff already had her boarding pass. Her checked baggage was already on board the plane and, unlike in McCarthy, she was in the restricted and security protected area of the terminal limited to American ticketed passengers.[2]

Plaintiff's contention that she was not under any direction and control is belied by the undisputed record. Ms. Dick testified that she had contracted for wheelchair assistance services as part of her need for her accompanying mother to reach, board and disembark on connecting flights in the airports during their travel.[3] At the time of the incident, she testified clearly that she was being directed and escorted by the wheelchair attendant. Dick Dep. At 32-33 ; 48-49;

---

[2] Plaintiff cites to Rabinowitz v. Scandinavian Airlines, 741 F. Supp. 441 (S.D.N.Y. 1990). Plaintiff's reliance on Rabinowitz is unavailing as the claimant in that case was injured in a public area of the terminal unlike here and also unlike here was not being led or accompanied by airline personnel and being directly escorted. The plaintiff in Rabinowitz was not being provided wheelchair assistance and escort services and was not being directed to any connecting flight. Plaintiff's reliance on Dunkor v. British Airways, 62 F. Supp. 963 (E.D.N.Y. 1999) is also misplaced as Dunkor held that the parties had failed to address any of the factors associated with the operations of embarking/disembarking.

[3] In fact, plaintiff included this allegation as part of her pre-trial demand. See **Exh. C** at p. 2 of American's Motion ([Plaintiff's mother] **needed wheelchair assistance on and off the airplane as well as traveling throughout the airport and arrangements were made with airline personnel for her to have such assistance**").

4

70; 78; 31, (**Exh. A** to American Motion); see also **Exh. C** to American Motion at pp. 2-3. Additionally, the attendant is claimed by the plaintiff to have specifically directed that plaintiff's mother to get out of the wheelchair and that both plaintiff and her mother get on the escalator. Indeed, Ms. Dick claims that she questioned the attendant whether or not it was a good idea to have her mother get out of the wheelchair and get on the escalator and was told that there was no other way to reach her connecting flight. See **Exh. C** at pp. 2-3 (plaintiff told by attendant no other way); Dick Depo. at 32-33 (**Exh. A** to American's Motion). This is substantial control and direction further demonstrating the applicability of the Warsaw Convention.

Plaintiff's efforts to distinguish and bypass the holding in Fazio v. Northwest Airlines, 2004 U.S. Dist. LEXIS 8423 (W.D. Mich. March 15, 2004) is also equally unavailing. Plaintiff clearly misses the import of the Fazio holding which provides a separate and independent basis from the location, activity, and control factors for finding that the Warsaw Convention preempts and controls plaintiff's claims. The court in Fazio found that the plaintiff's allegations of negligence centered on the purported failure of the airline to properly transport plaintiff by wheelchair to meet his flight. The incident there, as here, took place in the a terminal while the plaintiff was trying to connect with his connecting flight. The court held that since the theory of liability was premised on the duty to provide proper wheelchair assistance to assist in the embarking and disembarking process it fell within the ambit of Article 17's "course of embarking or disembarking" requirement.

Here, plaintiff similarly asserts that American owed a duty[4] to provide proper wheelchair assistance as part of the boarding, deboarding and related embarking/disembarking transit services in the terminal for connecting flights. According to the plaintiff's own claim and

---

[4] Indeed, plaintiff asserts that as the common carrier American owed a non-delegable duty to provide proper wheelchair assistance as part of the international flight services.

5

allegation: "[Plaintiff's mother] needed wheelchair assistance on and off the airplane as well as traveling throughout the airport and arrangements were made with airline personnel for her to have such assistance." (**Exh. C** p. 2 to American's Motion).

Just as in Fazio, plaintiff's theory of liability is premised on the alleged duty to provide proper wheelchair assistance to assist in the embarking and disembarking process. The claim is thus preempted by the Convention.

## CONCLUSION

Based on the foregoing, and the materials previously submitted to the Court, Defendant American Airlines, Inc. respectfully requests that its Motion for Summary Judgment be ALLOWED.

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on **June 19, 2006**

/s/ Tory A. Weigand

/s/ Tory A. Weigand
_____
Tory A. Weigand, BBO #548553
250 Summer Street
MORRISON MAHONEY LLP
Boston, MA  02210-1181
(617) 439-7500 (main no.)
(617) 737-8827 (direct dial)
*For the defendant, American Airlines, Inc.*