UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10446-GAO

EILEEN DICK,
Plaintiff

v.

AMERICAN AIRLINES, INC. and
WORLDWIDE FLIGHT SERVICES, INC.,
Defendants

ORDER
March 12, 2007

O'TOOLE, D.J.

This case arises from an injury sustained by the plaintiff while traveling from Trinidad to Canada on February 25, 2002. The plaintiff was traveling with her elderly mother who required wheelchair assistance within the airline terminal from American Airlines, the carrier on which both the plaintiff and her mother were traveling, which in turn contracted with Worldwide Flight Services, Inc. to provide wheelchair service to its passengers. The plaintiff's itinerary required a change of planes at Miami International Airport. In Miami, the plaintiff and her mother were proceeding from one gate to another and were directed by their escort to use an escalator because the elevator in the area was out of service. While riding the escalator, the plaintiff's mother fell backward onto the plaintiff, injuring her.

The plaintiff brought this action alleging state law claims of negligence against the defendants on February 1, 2005. The defendants now move for summary judgment on the ground that her state

law claims are preempted by the Warsaw Convention, and that under the Convention, her claims are barred by a two-year statute of limitations.

*Analysis*

The Warsaw Convention governs the liability of international air carriers and preempts state law claims when it applies. The first question is whether the Convention applies in a particular case. Acevedo-Reinoso v. Iberia Líneas Aéreas de España, S.A., 449 F.3d 7, 11 (1st Cir. 2006). Such a determination is a question of law to be decided by the court on the basis of the pertinent facts of each case. Id. at 11-12. The applicability of the Convention depends on whether the injury occurred "on board the aircraft or in the course of any of the operations of embarking or disembarking." Convention for the Unification of Certain Rules Relating to International Transportation by Air art. 17, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11 [hereinafter Warsaw Convention]. Article 17 of the Convention provides as follows:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

The phrase at issue here—"in the course of any of the operations of embarking or disembarking"— should be understood in its context. That is, it is part of the full phrase "on board the aircraft or in the course of any of the operations of embarking or disembarking." This fuller phrase could be appropriately paraphrased as: "on board the aircraft or in the course of any of the operations of getting on or getting off the aircraft." The suggested paraphrase conforms to the general instruction

from the First Circuit[1] concerning the task of interpreting and applying the provision: "There must be a 'tight tie' between [the] accident and the physical act of entering an aircraft." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 317 (1st Cir. 1995); see also Acevedo-Reinoso, 449 F.3d at 12.

The requirement that there be a "tight tie" between embarking or disembarking and the accident informs the three-part inquiry that the First Circuit has employed. A court must consider: "'(1) the passenger's activity at the time of injury, (2) his or her whereabouts when injured, and (3) the extent to which the carrier was exercising control…highly relevant in determining the applicability of [the Convention].'" Acevedo-Reinoso, 449 F.3d at 12 (quoting McCarthy, 56 F.3d at 317). As the court also said in McCarthy, "We do not view the three factors—activity, location, and control—as separate legs of a stool, but, rather as forming a single, unitary base." 56 F.3d at 317.

The first part of the test, the plaintiff's activity at the time of the injury, is to be understood in relatively narrow terms. After review of the drafting history of Article 17, the First Circuit has concluded that the original drafters viewed embarkation as "the physical activity of entering or exiting from an aircraft rather than as a broader notion of initiating or ending a trip." Martinez Hernandez v. Air France, 545 F.2d 279, 283-84 (1st Cir. 1976). Thus, Article 17 can be said to be, both textually and logically, limited to "any of the operations of" physically entering an aircraft, as opposed to the "broader notion" of continuing a trip by making a connection which requires traveling between an arrival gate and a departure gate. See McCarthy, 56 F.3d at 317 (rejecting the notion that the activity of "proceeding on an escalator from one level of the terminal's common area to another" was part of

---

[1] The Supreme Court has not spoken to the scope of the phrase "in the course of any of the operations of embarking or disembarking."

the boarding process); see also Marotte v. American Airlines, Inc., 296 F.3d 1255, 1260 (11th Cir. 2002) (holding that walking from the boarding gate to the jetway was within the scope of Article 17); Evangelinos v. Trans World Airlines, Inc., 550 F.2d 152, 153 (3d Cir. 1977) (applying Article 17 when the passengers had already completed all pre-boarding procedures and were awaiting the final step—physical and handbag searches); Day v. Trans World Airlines, Inc., 528 F.2d 31, 33 (2d Cir. 1975) (finding the Convention applicable where the passengers were standing in line at the boarding gate). This may be a narrower interpretation than that given by courts in other circuits. Cf. Fazio v. Northwest Airlines, Inc., No. 1:03-CV-808, 2004 WL 1001234, at *3 (W.D. Mich. Mar. 15, 2004) (giving a broader interpretation to Article 17).

To be part of the embarking process, the accident must also have occurred in a place "not too remote from location at which [the passenger] is slated actually to enter the designated aircraft." McCarthy, 56 F.3d at 317. This requirement reinforces the notion that the imminence of boarding must be considered when determining the applicability of Article 17. Id. at 317-18 (citing Evangelinos, 550 F.2d at 156 (applying Article 17 when the passengers "'standing in line at the departure gate ready to proceed to the aircraft'")); Buonocore v. Trans World Airlines, Inc., 900 F.2d 8, 10 (2d Cir. 1990).

Finally, most courts, including the First Circuit, have considered the degree to which the airline is controlling or directing the passengers' movement at the time of the accident. For example, in the Day and Evangelinos cases, the passengers had been assembled at the site of the "accident"[2] at the airline's request. The final boarding call had been issued by the airline, and the passengers were queued for the final security screening before actually boarding. Evangelinos, 550 F.2d at 156; Day, 528 F.2d at 33. In this circumstance, the Evangelinos court noted "it is reasonable to conclude that

---

[2]The "accident" in each case was a terrorist attack.

4

TWA had begun to perform its obligation as air carrier under the contract of carriage and the TWA, by announcing the flight and taking control of the passengers as a group, had assumed responsibility for the plaintiffs' protection. Thus, for all practical purposes, 'the operations of embarking' had begun." Evangelinos, 550 F.2d at 156. The First Circuit has further clarified that there must be "meaningful" control over passengers exercised by the carrier. McCarthy, 56 F.3d at 318 (refusing to find adequate control over the passenger despite the airline's representative maintaining possession over the passenger's passports, tickets, and boarding passes, because the passengers were not "obliged" to follow the airline representative "as a prerequisite to embarking").

With this guidance, I conclude that an accident "in the course of any of the operations of embarking or disembarking" is one that is relatively closely tied to the physical activity of getting "on board the aircraft." In this case, the accident on the escalator occurred as the plaintiff and her mother were traveling within the airport from an arrival gate to a departure gate. Their activity at that location was not sufficiently close in either space or time to the actual physical activity of getting on the aircraft to be considered part of the "operations of embarking or disembarking" for purposes of the Convention.

Even if the "control" aspect of the standard were satisfied, it does not, standing alone, trump other considerations. Id. ("'control'…alone, would not be enough to bridge the moat that surrounds Article 17"). Second, providing a passenger with courtesy wheelchair transport through the airport from one gate to another is not the kind of control that the cases seem to have in mind. Martinez Hernandez, 545 F.2d at 283 n.5 (stating that airline representatives on hand at the terminal to "welcome and assist" passengers were not exerting control because they were not "prescrib[ing] procedures which the passengers were obliged to follow"). Providing a courtesy transport through

the airport is quite different from organizing a group of passengers so that all might pass in an orderly fashion through security clearance or the actual boarding gate. See Evangelinos, 550 F.2d at 156 (finding control was assumed over the passengers when they were congregated and confined to a particular area at the request of the airline); Day, 528 F.2d at 33 (stating that passengers were not "free agents roaming at will through the terminal"). In this case, the wheelchair attendant was not directing the plaintiff or her mother to the escalator as part of the airline's boarding procedures and protocol, but rather was assisting the plaintiff and her mother to get where they wanted to go.

In the end, the principal question is how proximate the circumstances of the accident are—in time, space, and purpose—to the physical activity of getting on (or off) the plane. Not every action in the chain of activity that culminates in the physical boarding of the airplane is properly seen, consistent with the objectives of the Convention, as part of the "operations of embarking." Here, I conclude that traveling within the terminal toward the boarding gate is not within the "operations of embarking" as envisioned by Article 12. That being so, the Convention does not preempt the state law claims and those claims are not time-barred.

### *Conclusion*

For the foregoing reasons, I DENY both American Airlines' motion for summary judgment (dkt. no.15) and Worldwide Flight Services, Inc's motion for summary judgment. (dkt. no. 13.)

IT IS SO ORDERED.

  March 12, 2007                              /s/ George A. O'Toole, Jr.  
DATE                                          DISTRICT JUDGE